TOMMY G. PARSONS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Parsons v. Commissioner
Docket No. 25918-82.
United States Tax Court
T.C. Memo 1986-40; 1986 Tax Ct. Memo LEXIS 566; 51 T.C.M. (CCH) 366; T.C.M. (RIA) 86040; January 29, 1986
Tommy G. Parsons, pro se. Gerald W. Douglas, for the respondent. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined a deficiency in petitioner's 1979 Federal income tax in the amount of $4,021.03. After numerous concessions as set out in the parties' first stipulation of facts, the *567 issues remaining for decision are: (1) Whether petitioner is entitled to a dependency exemption for Connie Foosness under section 151(e)(1)(A); [1]
(2) Whether petitioner is entitled to a deduction in an amount in excess of that allowed by respondent for other expenses (business expenses) specifically listed on Schedule C as "sawes, axes, chains" and "gas and oil"; and (3) Whether petitioner is entitled to a deduction in any amount for the cost of goods sold in computing his gross profit from his logging business. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits thereto are incorporated herein by this reference. Petitioner Tommy G. Parsons resided in Astoria, Oregon, at the time the petition was filed in this case. Petitioner timely filed his individual 1979 Federal income tax return (Form 1040) with the Internal Revenue Service Center in Ogden, Utah. During 1979, petitioner *568 and Connie Foosness lived together for 11 months at Route 1, Box 237A, Angora, Minnesota. Petitioner was not related to Connie Foosness by blood or marriage. During this period, Connie Foosness was not employed. There is no evidence in the record as to the amount of any support petitioner furnished for Connie Foosness during 1979. Petitioner's father was a logging contractor, and petitioner worked with his father in the logging business until 1966. At that time, petitioner sought and obtained an electrician's apprenticeship from the International Brotherhood of Electrical Workers, Local 294, in Hibbing, Minnesota. Petitioner spent the next four years in trade school, and in 1970, petitioner became a journeyman electrician. About the time petitioner's father retired from the logging business, petitioner was experiencing difficulties in finding steady employment as an electrician. The construction industry was slowing down, and petitioner found himself out of work for extended periods of time. In an effort to supplement his sporadic employment as an electrician, petitioner purchased his father's logging equipment. Petitioner operated a logging business in Minnesota during *569 1979 and for part of 1980. Shortly after terminating his logging business, petitioner moved to Oregon. During the year 1979, petitioner operated a logging business and was also employed as an electrician. Petitioner submitted a bid on a timber sale that was offered by the United States Department of Agriculture--Forest Service. The quantity of timber involved was small enough that petitioner could perform the work himself on a part-time basis during the periods of his unemployment as an electrician. Petitioner considered his logging business a part-time venture and worked as an electrician whenever the opportunity arose. Petitioner was awarded the timber sale contract on February 21, 1979, at a total cost of $4,704.60. In addition, pursuant to the terms of the contract, petitioner was required to post a performance bond in the minimum amount of $300 or 10 percent of the bid. Petitioner complied with this requirement and posted $500 in cash, in lieu of a bond, on February 26, 1979. The termination date of this contract, as set forth therein, was June 30, 1979, but the term of the contract could be extended pursuant to the Contract Term Extension provision contained therein. *570 The record does not clearly establish whether petitioner requested, or the Department of Agriculture granted, such an extension. [2]
The timber sale contract required petitioner to cut and remove the timber designated in the contract on or before the termination date. The timber to be cut under the contract stood on four acres of land in the Superior National Forest located in the Ranger District of Virginia, Minnesota. The name of this timber sale, as designated in the contract, was Big Pit-Compartment 62. The Payment Unit Schedule of the contract contained the following table setting forth the seven different species of timber purchased, the volume of each species to be cut, and the bid rates corresponding to the quality and the value of the differing species of timber listed. [3]
Species and Product
Volume
Bid Rate
Total
White spruce sawtimber
3 Ccf
$20.00/Ccf
$ 60.00
Mixed pine sawtimber
34 Ccf
25.88/Ccf
879.92
Red and white pine sawtimber
71 Ccf
48.93/Ccf
3,474.03
White spruce pulpwood
1 Ccf
10.56/Ccf
10.56
Mixed pine pulpwood
17 Ccf
13.83/Ccf
235.11
Paper birch pulpwood
11 Ccf
3.18/Ccf
34.98
Aspen pulpwood
4 Ccf
2.50/Ccf
10.00
141 Ccf
Total
$4,704.60
*571 The abbreviation Ccf, which is used above to designate a certain volume amount, is a unit of measurement commonly used in the forestry trade and represents 100 cubic feet. Moreover, the forestry trade refers to 100 cubic feet (Ccf) as a cunit. [4]
*572 During the year 1979, petitioner was employed as an electrician at three different construction sites. He drove to and from these construction sites each day in his pickup truck and incurred various vehicle expenses. Petitioner did not retain receipts or records to compute these expenses but determined his local transportation expenses at the end of the year by referring to his paycheck stubs and his employee W-2 forms.Petitioner used his W-2 forms to establish the different locations at which he had worked during the year. Petitioner knew the distances between his house and the various construction sites. By referring to his paycheck stubs, petitioner determined how many 8-hour shifts that he had worked at each construction site. Petitioner counted each 8-hour shift as a trip to and from the jobsite. Petitioner determined how many trips that he had made during the year to these various temporary construction sites and consequently computed the total mileage that he had traveled. Petitioner also expended an undetermined amount of time in his logging business during 1979 and had gross receipts of $6,917 from that business. Petitioner used the same pickup truck in his logging *573 business that he used to travel to and from the construction sites during the periods while he was employed as an electrician. However, petitioner did not maintain any records to establish when he used his truck in the logging business or when he drove it to the construction sites. Petitioner generally did not work in the logging business while he was working as an electrician. Petitioner contracted out the work that had to be done in the logging business during the periods that he was working as an electrician and could not perform the work himself. Petitioner incurred various expenses in connection with his logging business in 1979 and calculated these expenses from some cancelled checks and various receipts he retained. However, petitioner did not maintain any log books, diaries, or other records of any kind relating to his logging business. [5]
*574 On his 1979 Federal income tax return (Form 1040), petitioner claimed a dependency exemption for Connie Foosness. Petitioner also reported a business loss in the amount of $3,426 from his logging business. On Schedule C, petitioner reported gross receipts from his logging business in the amount of $6,917, cost of goods sold in the amount of $2,635, and resulting gross profit in the amount of $4,282. Petitioner claimed depreciation and various business expenses in connection with his logging business totalling $7,708, which resulted in the reported loss for the year 1979 in the amount of $3,426. In his statutory notice of deficiency dated August 3, 1982, respondent disallowed, among other things, the dependency exemption that petitioner claimed for Connie Foosness, the cost of goods sold item, and the depreciation and business expense items for the logging business. [6] The depreciation and most of the business expense items were ultimately disposed of prior to trial. [7]
*575 OPINION Except perhaps for the dependency exemption issue, the issues remaining for determination are purely factual and essentially matters of substantiation. Deductions are a matter of legislative grace, and petitioner has the burden of establishing that he is entitled to the deductions he claimed. New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934); Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Dependency Exemption
Petitioner claimed a dependency exemption for Connie Foosness for 1979. He and Connie Foosness lived together for 11 months of that year. They were not related by blood or marriage during the time they lived together. Connie Foosness was not employed during this period, and petitioner contends that he was her sole means of support. Section 151(e)(1)(A) allows "[a]n exemption * * * for each dependent (as defined in section 152) whose gross income for the calendar year in which the taxable year of the taxpayer begins is *576 less than $1000." Section 152(a)(9) defines "dependent" to include (1) an individual "over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer," and (2) such "individual (other than an individual who at any time during the taxable year was the spouse, determined without regard to section 143, of the taxpayer) who, for the taxable year of the taxpayer, has as [her] principal place of abode the home of the taxpayer and is a member of the taxpayer's household." [8]
*577 It is not necessary under section 152(a)(9) that an individual be related to the taxpayer to qualify as his dependent. However, in order for an unrelated individual to qualify as a dependent under section 152(a)(9), such individual must live with the taxpayer and be a member of the taxpayer's household throughout the entire taxable year of the taxpayer. Sec. 1.152-1(b), Income Tax Regs.; Trowbridge v. Commissioner,268 F.2d 208 (9th Cir. 1959), affg. per curiam 30 T.C. 879 (1958); McMillan v. Commissioner,31 T.C. 1143, 1145-1146 (1959). [9] Therefore, since Connie Foosness was not a member of the petitioner's household for the entire taxable year in issue, she does not qualify as a dependent under section 152(a)(9), and petitioner is not entitled to claim a dependency exemption for her. In any event, petitioner failed to substantiate the amount of any support he furnished for her, and thus failed to prove that he furnished over half of her support as required by section 152(a).
Logging Business
The remaining *578 issues are simply matters of substantiation. As noted above, petitioner has the burden of proving that he is entitled to the deductions he claimed, which includes establishing that he in fact incurred the expense or other item deducted. In regard to petitioner's logging business, respondent in effect accepted the gross receipts figure and disallowed all deductions relating thereto, including cost of goods sold. Cost of Goods Sold
On Schedule C attached to his 1979 Form 1040, petitioner reported gross receipts from his logging business in the amount of $6,917 and deducted from this amount the cost of goods sold in the amount of $2,635 to arrive at a gross profit figure in the amount of $4,282. [10] Respondent disallowed the cost of goods sold deduction in its entirety and contends that petitioner completely failed to produce adequate documentation to prove or substantiate any amount. In addition, resondent argues that approximating the amount of the cost of goods sold is inappropriate under the rule established in Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930), because there exists no reasonable basis for its applicability. Respondent simply disregards *579 the fact that petitioner spent at least $4,704.60 for timber in 1979. The cost of goods sold equals opening inventory at the beginning of the taxable year, plus the cost of inventory acquired during such year, minus the closing inventory at the end of the taxable year. Thor Power Tool Co. v. Commissioner,439 U.S. 522, 530 n. 9 (1979). Normally, the opening inventory at the beginning of a taxable year is the ending inventory carried forward from the close of the previous taxable year. However, petitioner began his logging business in 1979 and therefore had no ending inventory from 1978 to carry forward to 1979 as opening inventory. Consequently, petitioner's total inventory of his logging business for the year 1979 derived solely from purchases *580 that he made during such year. The record indicates that petitioner made only one such purchase during 1979, the $4,704.60 timber sales contract with the Department of Agriculture--Forest Service. Accordingly, petitioner's total inventory of his logging business for the taxable year 1979 was $4,704.60. Petitioner could have calculated his cost of goods sold in one of two ways. First, he could have inventoried the timber that remained unsold at the close of the 1979 taxable year and subtracted this figure from the total inventory for such year. Second, petitioner could have calculated the cost of the timber that he actually sold during the 1979 taxable year.Respondent argues that the evidence presented neither provides an ascertainable standard to measure the quantity of timber that petitioner allegedly sold during 1979 nor verifies the accuracy of the ending inventory figure in the amount of $2,070 as indicated on his return. While the evidence is sparse, we do not think it warrants complete denial of any cost of goods sold. Petitioner says that his total inventory for 1979 consisted of 141 cunits of various species of timber at an average cost of $33.37 per cunit (total cost *581 of $4,704.60 / 141 cunits). We think this average cost figure is meaningless in view of the different species of timber, different types (sawtimber vs. pulpwood), and great variations in petitioner's own bid prices per cunit (Ccf) of different types of timber. Petitioner testified that he sold 78.98 cunits of timber during 1979 which, according to his calculations, is equivalent to the cost of goods sold deduction that he claimed for the year in issue in the amount of $2,635 (78.98 X $33.37 per cunit). This testimony was based on what someone had allegedly told him over the telephone the morning of the trial, and we disregard such hearsay. [11] There is no probative evidence in the record as to the number of cunits (Ccf) of timber petitioner sold in 1979. Petitioner further testified that he carried forward to 1980 as opening inventory the 62.02 cunits of timber that remained unsold at the close of the taxable year in issue, which he says is equivalent to $2,070 (141 cunits minus 78.98 X $33.37). Again, there is no probative evidence to establish the cunits of timber that remained unsold at the end of 1979. Also, the contract with the Forest Service was a contract to cut and remove *582 the timber designated in the contract, and there is no evidence that petitioner ever cut and removed all the timber he was permitted to cut. Petitioner did not keep business records regarding the activities in his logging business. The only documents that petitioner ever presented to respondent or this Court in regard to the amount of timber were three receipts representing petitioner's gross timber sales in 1979. The sum of these receipts total $6,917, which corresponds with the amount petitioner reported as gross receipts on Schedule C. However, there is no method, reasonable or otherwise, for translating the quantity of timber represented on the face of these receipts into 78.98 cunits or any other number of cunits. [12] Standing alone, these three receipts are not adequate to support petitioner's cost of goods sold deduction. Respondent argues that petitioner failed to establish that he actually sold any timber in 1979 and therefore is not entitled to any cost of goods *583 sold deduction. Respondent complains, with considerable justification, that petitioner did not allow respondent the opportunity to make copies of these receipts prior to trial to conduct an independent verification of their validity. Consequently, respondent argues that all three receipts are totally lacking in credibility and should be given no force and effect. *584 While the receipts are not on their face sufficient to support petitioner's claimed cost of goods sold deduction in the amount of $2,635, and while petitioner's evidence leaves much to be desired, we think petitioner is nonetheless entitled to some amount as cost of goods sold.Petitioner paid the Department of Agriculture--Forest Service an amount of $4,704.60 for timber in 1979. While we do not know how much timber or what types that petitioner cut and removed under that Forest Service contract, petitioner had gross receipts from his logging business in 1979 in the amount of $6,917. We think it necessarily follows that petitioner is entitled to deduct some amount in computing his gross profit from his logging business that represents the cost he incurred in purchasing this timber. When a taxpayer proves that some part of an expenditure was made for deductible purposes and when the record contains sufficient evidence for us to make some reasonable approximation, we will do so. Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). Although the evidence is less than satisfactory *585 for this purpose, we will do our best with the materials at hand, "bearing heavily * * * upon the taxpayer whose inexactitude is of his own making * * *." 39 F.2d at 543-544. Petitioner was in the logging business for 1979 and part of 1980. The record indicates that petitioner had no opening inventory at the beginning of 1979 and that petitioner's total inventory of timber in 1979 derived solely from the one purchase in the amount of $4,704.60. Accordingly, based on all the facts and circumstances, but bearing heavily against petitioner for the inexactitude of his evidence, we conclude that petitioner is entitled to a cost of goods sold deduction in 1979 in the amount of $1,500. Business Expenses
Gas and Oil Expense
On his Schedule C, petitioner claimed a deduction for gas and oil expenditures in the amount of $980, purportedly incurred in his logging business. Most of the receipts in support of this item do not bear petitioner's name, none of the receipts contain any license number or vehicle number to connect these receipts with petitioner's logging business, and several of the receipts are not even dated. Petitioner refused to allow respondent to *586 make copies of these receipts until the day before trial, and consequently, respondent had no opportunity to verity the authenticity of these receipts. Except for his testimony, purporting to identify these receipts, petitioner presented no additional evidence to document that these gas and oil receipts represented expenses paid and incurred in his logging business. As noted earlier, petitioner did not maintain any log books, diaries or other records of any kind relating to his logging business. Respondent complains that determining whether these gas and oil receipts represent valid business expenses paid and incurred in petitioner's logging business or whether the receipts represent nondeductible personal expenditures or expenses incurred while petitioner worked as an electrician requires pure speculation. While we are most sympathetic to respondent's complaints, we will not wholly disallow the item. Petitioner was engaged in the logging business during the taxable year 1979. Petitioner had gross receipts from the sale of timber during such year in the amount of $6,917. On Schedule C, petitioner claimed, and respondent has now allowed, a depreciation deduction totalling $1,900 *587 on four pieces of equipment that he used in his logging business. In addition, petitioner claimed, and respondent has now allowed, various other deductions relating to petitioner's logging business, including expenses for contract labor, truck rental, and sawmill rental. It would indeed be anomalous to find that petitioner operated a logging business during 1979 without incurring any expense for "gas and oil." We think the very nature of petititioner's business mandates a finding to the contrary. The record thus establishes that petitioner incurred gas and oil expenses in his logging business during 1979, and we will determine the amount petitioner is entitled to deduct. While petitioner claimed gas and oil expenses on Schedule C in the amount of $980, the gas and oil receipts that petitioner presented at trial to substantiate these expenses totalled $1,039.86. After examining these receipts, we found several of them to be totally lacking any probative value. Two of the receipts, each in the amout of $21.50, dated September 25, 1979, were duplicates. Moreover, we found that four of the receipts totalling $55.89 were not dated. After discarding one of the duplicate receipts *588 in the amount of $21.50 and the four undated receipts totalling $55.89, we considered the remaining receipts totalling $962.47. The real problem is that petitioner used his pickup in both his logging business and in his travel to the construction sites where he worked as an electrician. Although the evidence is far from clear, we conclude that several of these receipts totalling $235.45 provide a sufficient nexus to petitioner's logging business and adequately represent gas and oil expenses incurred therein during the year in issue. [13]
*589 The remaining gas and oil receipts that we examined cannot be specifically identified with petitioner's logging business. These receipts indicate expenditures for items that are germane to but not sufficiently peculiar to petitioner's logging business for us to find the necessary nexus. However, when a taxpayer proves that some part of an expenditure was made for deductibel purposes and when the record contains sufficient evidence for us to make a reasonable allocation, we will do so. Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). However, the record in this case provides no reasonable basis for making such an allocation. [14] This is particularly true since petitioner also used his pickup in his work an an electrician, and these receipts may well be related, at least in part, to that local transportation for which respondent has already allowed a deduction. Under such circumstances, a deduction based on the Cohan rule in excess of the $235.45 would be "unguided largesse." Williams v. United States,245 F.2d 559 (5th Cir. 1957). *590 "Sawes, Axes, Chains"
On his Schedule C, petitioner claimed a business deduction in the amount of $409 for "sawes, axes, chains" in connection with his logging business. Just before trial and based upon receipts petitioner finally submitted for respondent's inspection, respondent conceded expensee for "sawes, axes, chains" in the amount of $131.91. Petitioner presented these same receipts to the Court at the trial and testified generally that they are what they purport to be. The record establishes that petitioner incurred some expenses for "sawes, axes, chains" in his logging business during 1979, and we must determine if the amount exceeded the $131.91 conceded by respondent. After examining petitioner's receipts, we found the year of purchase missing on two of the receipts totalling $23.45 and disregarded them. Of the remaining receipts, we found five totalling $124.07 that are reasonably attributable to petitioner's logging business. [15]
*591 Of the remaining receipts that we examined, petitioner has failed to connect these receipts with his logging business. Moreover, the record in this case provides absolutely no reasonable basis for making an allocation based on the Cohan rule. Cohan v. Commissioner,supra. Under such circumstances, any further deduction based on the Cohan rule would be "unguided largesse". Williams v. United States,supra.Accordingly, petitioner is entitled to an additional deduction for "sawes, axes, chains" expenses in the amount of $124.07. In summary, petitioner is not entitled to claim a dependency exemption for Connie Foosness; petitioner is entitled to a cost of goods sold deduction in the amount of $1,500, a deduction in the amount of $235.45 for gas and oil expenses, and a deduction in the amount of $124.07 for "sawes, axes, chains" expenses in addition to the $131.91 previously allowed by respondent. [16]
To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year in question, and all "Rule" references are to the Tax Court Rules of Practice and Procedure.↩
2. Since the record establishes that petitioner carried on his logging business during part of the year 1980, we think it likely that the contract term was extended.↩
3. Respondent did not have an opportunity to examine this timber sale contract either prior to or during the trial. Pursuant to an oral order from the Court at the close of the trial, the record in this case was held open for 30 days to permit the parties to file a supplemental stipulation or other documentation with respect to the cost of goods sold issue. Within this permissible time frame, petitioner submitted to respondent copies of numerous documents. These documents consisted of 9 pages and included the timber sale contract executed between petitioner and the United States Department of Agriculture--Forest Service. Also included were a "special provisions" section and a "payment unit release" section, both pertaining to specific terms of the contract, together with two documents labelled "bill for collection." Respondent forwarded these documents to the Court, and by order these documents were received into evidence. The Court does not condone petitioner's failure to cooperate with respondent's agents during the audit or during the pre-trial preparations. Petitioner's tactic of showing respondent's counsel a document but not permitting him to copy it was wholly improper and to be condemned. Petitioner is admonished to desist from any such tactics in any future case in this Court. Nonetheless, the Court wished to decide this case on as complete a record as possible and thus kept the record open after the trial as noted above. ↩
4. The contract neither indicates that the abbreviation Ccf represents 100 cubic feet nor that 100 cubic feet is commonly referred to as a cunit. Petitioner testified that 100 cubic feet of timber is equivalent to 1 qunit [sic] and that he purchased 141 qunits [sic] under the contract. We find petitioner's testimony on this matter both credible and reliable. See Terms of the Trade, A Handbook for the Forest Products Industry, 21, 108 (W. Dean & D. Evans ed. 1978).↩
5. We find this rather peculiar since petitioner testified that he had been audited by the Internal Revenue Service every other year since 1966, and consequently, knew which expenses had to be substantiated with receipts. Petitioner stated that he retained only those receipts that pertained to expenses incurred in the logging business, because those were the only receipts that he would need to produce in the event of any audit. Had petitioner maintained proper records and produced them during the audit, we think it unlikely that this litigation, involving as it does primarily substantiation issues, would have been necessary.↩
6. Petitioner had also claimed a Federal tax credit for special fuels and oils in connection with his logging business. We note a mathematical error on petitioner's Form 4136 in the computation of his Federal gasoline tax credit. Petitioner reported 600 gallons of fuel for nonhighway use and claimed a credit in the amount of $72. However, the applicable credit rate for the year in issue, as provided on Form 4136, for computing petitioner's Federal gasoline tax credit was $ .02 per gallon. Accordingly, petitioner was only entitled to claim a Federal gasoline tax credit for the year in issue in the amount of $12 (600 X $ .02) at most. The record does not indicate that respondent corrected this mathematical error. Moreover, the statutory notice of deficiency does not reflect that respondent disallowed any portion of petitioner's Federal gasoline tax credit for the year in issue. ↩
7. Respondent made numerous concessions once petitioner produced whatever documentation he had, but such production was accomplished only after respondent was forced to file formal discovery motions which the Court granted. Petitioner did not comply with the Court's order and finally produced his documents the day before the trial and only after the Court threatened to impose sanctions. In view of the numerous concessions made by respondent after reviewing petitioner's documentation, we think the result the Court has reached after careful study of the documents is close to what might have been achieved during the audit had petitioner cooperated to substantiate the items he claimed and had he eschewed frivolous constitutional arguments and improper delaying tactics. See nn. 3, 5, supra.↩
8. SEC. 152. DEPENDENT DEFINED. (a) General Definition.--For purposes of this subtitle, the term "dependent" means any of the following individuals over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer (or is treated under subsection (c) or (e) as received from the taxpayer): * * * (9) An individual (other than an individual who at any time during the taxable year was the spouse, determined without regard to section 143↩, of the taxpayer) who, for the taxable year of the taxpayer, has as his principal place of abode the home of the taxpayer and is a member of the taxpayer's household.
9. See also Rodenbaugh v. Commissioner,T.C. Memo. 1981-593↩.
10. Gross income derived from business means "the total sales, less the cost of goods sold, plus any income from investments and from incidental or outside operations or sources." Section 1.61-3(a), Income Tax Regs.↩
11. The Court is inclined to think petitioner simply backed into this figure by taking the cost of goods claimed on his return ($2,635) and dividing it by his purported average cost per cunit ($33.37).↩
12. The first receipt, dated June 12, 1979, indicates that petitioner sold a total of 122 Norway pine poles of various lengths for a total price of $4,937.50. However, the receipt indicates that the sales price was calculated by the lineal foot (1f) rather than by the cubic foot. The second receipt, dated July 25, 1979, indicates that petitioner sold two loads of Pine Bolts for a total purchase price of $1,467.40. The last receipt consists of a photocopy of two check stubs from Potlatch Corporation, Northwest Paper Division. One of the check stubs indicates that check #016739 was purportedly issued in the amount of $386.95. The other check stub indicates that check #016885 was purportedly issued in the amount of $125.35. There is no description of the type or amount of timber involved. We have accepted petitioner's testimony that these receipts represent his sales of timber from the Forest Service contract, but that fact is not evident on the receipts themselves. It is unfortunate that petitioner would not permit respondent to copy these receipts before the trial and investigate as to exactly what the receipts covered.↩
13. Of these receipts totalling $235.45, an amount of $207.45 represents the purchase of gasoline in cans or barrels. While these receipts do not bear any vehicle number or license number or indicate any specific use, and while most of these receipts are made out to cash and do not bear petitioner's name, we think that it is reasonable to conclude that operating a logging business requires quantities of gasoline to be located on the jobsite for use in the various pieces of equipment utilized in such an operation. Accordingly, we think that the receipts indicating the purchase of gasoline in cans and barrels are reasonably attributable to expenses incurred in petitioner's logging business. The remaining portion of the $235.45 consists of two receipts indicating the purchase of Penta concentrate (Pentachlorophenol - A chemical used in wood preserving; it is usually applied under pressure so that it will penetrate the wood. Terms of the Trade, A Handbook for the Forest Products Industry, 66 (W. Dean & D. Evans ed. 1978)). Both receipts are in the amount of $14 and are dated June 9 and 18, 1979, respectively. Prior to trial, respondent allowed a business expense deduction in the amount of $20.77 (sawes, axes, chains) for a yard and garden sprayer. The receipt indicates that the sprayer was purchased to apply Penta concentrate to poles. We think that the two receipts toalling $28 for the purchase of the Penta concentrate are also reasonably attributable to expenses incurred in petitioner's logging business.↩
14. Petitioner testified that just prior to trial, he examined and totalled his gas and oil receipts and arrived at a figure a little in excess of the amount of $980 claimed on his return. Moreover, he stated that $728 of the total claimed represented expenses for gasoline, and the remaining portion represented expenditures for hydraulic oil, as shown on the receipts. Petitioner also testified that the amount of $728 represented approximately 970 gallons of fuel at an average cost of 75 cents per gallon. Petitioner claimed that this fuel was used in connection with the timber contract with the Forestry Service. While this quantity of fuel and hydraulic oil might indeed represent a reasonable consumption if all of that timber was in fact cut and removed, the record does not support such an allocation. Petitioner kept no contemporaneous business records of the daily activities in his logging business. Except for petitioner's self-serving and wholly uncorroborated testimony, the record is devoid of any evidence that eveny remotely correlates this quantity of fuel and hydraulic oil with the cutting and the removal of 141 cunits of timber. We note that petitioner reported 600 gallons of fuel for nonhighway use and claimed a Federal tax credit for such usage on Form 4136. Respondent disallowed petitioner's gas and oil expenses in their entirety, but failed to make an adjustment with respect to the gasoline allegedly qualifying for the Federal fuel tax credit when determining petitioner's deficiency for the year in issue. We consider this omission a mere oversight by respondent, which does not indicate that petitioner actually used 600 gallons of gasoline for nonhighway use in his logging business.↩
15. The following is a list of the receipts that represent the additional expenses allowed in the amount of $124.07: Seller
Date
Item(s)
Total Amount
1. Jonsereds
March 9, 1979
Chain Bar
$45.76
Chain Saw
2. L & M Supply
April 28, 1979
Tractor Battery
32.11
3. Ace Hardware
June 13, 1979
Sharpening Stones
9.84
4. L & M Supply
June 13, 1979
Ax File
15.98
5. F & S Radiator
December 13, 1979
Clean and Repair
Service
John Deere Radiator
20.38
Although most of these receipts do not bear petitioner's name, we think the items or services purchased, as reflected on these receipts, are sufficiently associated with petitioner's logging business to allow a deduction.↩
16. A corresponding adjustment to petitioner's self-employment tax will be necessary to reflect these changes on petitioner's Schedule C.↩